

# Office of the Attorney General
## State of Texas

DAN MORALES
ATTORNEY GENERAL

March 4, 1992

Honorable Gary Watkins
Chairman
Committee on Higher Education
Texas House of Representatives
P. O. Box 2910
Austin, Texas 78768-2910

Opinion No. DM-95

Re: Whether a city council violates the Open Meetings Act when a majority of the council signs a letter that has not been authorized in an open meeting (RQ-252)

Dear Representative Watkins:

You ask whether members of a city council violate the Open Meetings Act, article 6252-17, V.T.C.S. (hereinafter the "act"), when the members, constituting a majority of the council, sign a letter expressing an opinion on matters relevant to the city government. You enclose as an example a letter signed by a majority of members of a city council, expressing the support of the "undersigned majority" of the city council for an attached resolution. While we can discuss relevant provisions of the act and case law with respect to questions of law raised by your inquiry, a determination of whether a violation of the act has actually occurred in a specific situation requires factual determinations, which we cannot make in an attorney general opinion. Your question is therefore considered hypothetically, without reference to any particular incident. For purposes of this discussion, we will assume that (1) the letter in question concerns public business or public policy over which the governmental body has control or supervision, and (2) the letter has not been considered and approved in a meeting held in compliance with the act.

We realize that a dispute may occur over whether a letter signed by a majority of a governmental body represents an "official" action or merely an action of each of a group of individuals who all happen to serve on the same governmental body. Every person has a First Amendment right to express an opinion. However, when a governmental body acts, the law requires that the action taken complies with its terms. It is a well established rule, predating the Open Meetings Act, that a governmental body must act as a body. *Webster v. Texas & Pacific Motor Transport Co.*, 166 S.W.2d 75 (Tex. 1942). The purpose of this rule

> is to afford each member of the body an opportunity to be present and to impart to his associates the benefit of his experience, counsel, and judgment, and to bring to bear upon them the weight of his argument on the matter to be decided by the Board, in order that the decision, when finally promulgated, may be the composite judgment of the body as a whole.

*Id.* at 77. Presumably, when a group of people act in concert, some meeting of the minds has occurred to make that action possible. With respect to actions taken by governmental bodies, it is the process by which this meeting of the minds occurs that the act is intended to open to public scrutiny. *Cox Enters. Inc. v. Board of Trustees of Austin Indep. School Dist.*, 706 S.W.2d 956, 960 (Tex. 1986) (the act is intended to safeguard the public's interest in knowing the workings of its governmental bodies).

While we are unable to anticipate every possible fact situation that might occur, we think an action taken by a quorum of a governmental body on a matter of public policy of concern to that governmental entity is not merely the action of each member of a group of individuals, but is an action of the governmental body. When a majority of a governmental body acts on a matter of public policy under its jurisdiction, even in a way that is not binding upon the governmental entity served by the body, the policy enunciated by the Texas Supreme Court in *Webster* suggests that such action must be taken by the governmental body as a whole, subject to the laws, including the Open Meetings Act, governing the behavior of the governmental body. Therefore, for purposes of this discussion, a letter signed by a quorum of a governmental body, concerning public business or public policy over which the governmental body has control or supervision, would normally be an official action of the signatory members subject to the requirements of the act.

To accomplish its end, the act requires that every meeting of a governmental body, with certain narrowly drawn exceptions, be open to the public and that the public be given notice of meetings. V.T.C.S. art. 6252-17, §§ 2, 3A. "Meeting," for purposes of the act, is defined as

> any deliberation between a quorum of members of a governmental body, or between a quorum of members of a governmental body and any other person, at which any public business or public policy over which the governmental body has supervision or control is discussed or considered, or at which any formal action is taken. . . .

V.T.C.S. art. 6252-17, § 1(a). "Deliberation" is defined as

> a verbal exchange during a meeting between a quorum of members of a governmental body, or between a quorum of members of a governmental body and any other person, concerning any issue within the jurisdiction of the governmental body or any public business.

*Id.* § 1(b). The act provides criminal penalties for a member of a governing body who knowingly calls or aids in calling an improper closed meeting. *Id.* § 4(a). The act also criminally sanctions a member of a governing body who knowingly conspires to circumvent the act by meeting with other members in numbers less than a quorum for secret deliberations. *Id.* § 4(b). The act provides mandamus or injunction as civil remedies to stop, prevent, or reverse violations of the act. *Id.* § 3(a). Actions taken by a governmental body in violation of the act are voidable. *Id.*

If it were established as a matter of fact that members of a governmental body had gathered together in numbers sufficient for a quorum to discuss the wording of a letter concerning public business or public policy over which the governmental body had control or supervision, and if such gathering were not open to the public or preceded by notice in compliance with the act, it would follow from the definitions quoted above that a violation of the act had occurred.

A more problematic fact situation occurs when one or more members, but less than a quorum, drafts a letter, and then presents the material (or has the material presented) to the other signatories, always meeting in numbers less than a quorum. In this way a "meeting" and a "deliberation" as defined in the act are arguably avoided because even though the verbal exchange among the council members may at any one time engage less than a quorum of the council, the verbal exchanges do not occur during a meeting where a quorum of members is simultaneously in each other's physical presence.[1]

---

[1] The possibility of finding that deliberations in violation of the act have occurred would be much less likely in the situation where a letter was circulated among a quorum of the council, but where no two members of the council at any time discussed the contents of the letter. Again, however, the totality of circumstances would have to be considered if the governmental body's actions were challenged under the act. *See* Attorney General Opinions MW-32 (1979) (a procedure permitting individual members of a governmental body to write to the executive director suggesting items to place

In *Hitt v. Mabry*, 687 S.W.2d 791, (Tex. App.--San Antonio 1985, no writ), the court of appeals considered an appeal from a permanent injunction, issued by the district court, enjoining the San Antonio Independent School District from, among other things, conducting informal meetings or telephone conferences to discuss or decide on matters of public policy. The district court had found that such discussions or decisions were in violation of sections 2(a) and 3A of the act. *Id.* at 794. The event that caused the litigation in *Mabry* was the discovery by the plaintiff that the San Antonio Independent School District intended to mail a letter to all parents in the district, "advising recipients of their voting rights and stating the message was a service of the school district's Board of Trustees." The plaintiff complained, among other things, that there had been no discussion of the letter in an open meeting of the board. *Id.* at 793.

The court of appeals modified certain aspects of the injunction, but let stand a permanent injunction against the board enjoining them from:

> Arriving at a decision involving public business or public policy affecting SAISD by way of private informal meetings or conferences, including telephone polls of the members of the Board . . . .

*Id.* at 796.

The argument set forth in the dissenting opinion in *Mabry* is helpful in understanding the significance of the majority holding in that case. In dissenting from the majority holding, Chief Justice Cadena stated:

> There is another difficulty with the injunction as modified. Plaintiffs alleged that the use of telephone polls was a conspiracy to circumvent the provisions of the Open Meeting Act . . . . As applicable to this case, the "governmental body" which is required to meet publicly is the Board of Trustees, and the requirement that meetings of that body be public applies

---

(footnote continued)
on the agenda of a future meeting does not violate the Open Meetings Act); H-1163 (1978) (prohibiting the use of secret ballots by governmental bodies).

only when a quorum is present, since in the absence of a quorum there is no "meeting."

*Id.* at 798.

With respect to polling the members of the governmental body individually, the dissent appears to take the view that the simultaneous physical presence of a quorum in one place is necessary for a violation of the act's requirement that meetings be open to the public. Though the majority opinion does not expressly discuss this point, it is clear that it takes the opposite view, i.e., a view consistent with the district court's finding that the practice constitutes a violation of sections 2 and 3A of the act. This view is the basis for the district court's issuance of the injunction, which the majority opinion upheld.

Though polling members of a governmental body by telephone was specifically at issue in *Mabry*, it seems immaterial to the application of the law whether such polling was done by telephone or otherwise. Following *Mabry*, it appears that the physical presence of a quorum in a single place at the same time is not always necessary for a violation of sections 2 and 3A to occur. Avoiding the technical definition of "meeting" or "deliberation" is not, therefore, a foolproof insulator from the effect of the act. Indeed, it would appear that the legislature intended expressly to reach deliberate evasions of these definitions in enacting section 4(b) of the act. *See also* Attorney General Opinion JM-584 (1986) (in the absence of specific legislative authority, a governmental body that meets by telephone conference call will not comply with the act).

Whether any specific behavior or pattern of behavior constitutes a violation of the act must ultimately be determined by a trier of fact. There is a continuum of behavior from that which clearly complies with the act to that which clearly violates it. We think, however, that a governing body that deliberates through a series of closed meetings of members of less than a quorum risks a finding by a trier of fact that either a violation of sections 2 or 3A has occurred, or worse, that members have conspired to circumvent the act in violation of section 4(b).

The Open Meetings Act is intended to open to public scrutiny the process by which governmental bodies reach decisions affecting public policy or business over which the governmental bodies have supervision or control. *Cox Enterprises, supra.* If a quorum of a governmental body agrees on a joint statement on a matter of such business or policy, the deliberation by which that agreement is reached is subject to

the requirements of the act, and those requirements are not necessarily avoided by avoiding the physical gathering of a quorum in one place at one time. *Hitt v. Mabry, supra.*

## S U M M A R Y

If a quorum of a governmental body agrees on a joint statement on a matter of governmental business or policy, the deliberation by which that agreement is reached is subject to the requirements of the Open Meetings Act, and those requirements are not necessarily avoided by avoiding the physical gathering of a quorum in one place at one time. Whether any specific behavior or pattern of behavior constitutes a violation of the act must ultimately be determined by a trier of fact.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

JUDGE ZOLLIE STEAKLEY (Ret.)
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by John Steiner
Assistant Attorney General